# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON

**DENNIS BURCH and
The Class of Similarly Situated Persons
Being Those State of West Virginia Prisoners
Serving a Sentence of Life with the Possibility of Parole
for a Crime Committed Before July 10, 1997,**

      **Plaintiffs,**

**v.**                            **Case No. 2:17-cv-03311**

**BENITA MURPHY, Chairperson,
West Virginia Parole Board,
MICHAEL TRUPO,
CAROLE B. GREENE, and
PEGGY POPE, Members, West Virginia Parole Board
all in their official capacities,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

This civil action is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## THE PLAINTIFF'S COMPLAINT AND MOTIONS

On June 16, 2017, the Clerk's Office received and docketed a Complaint under 42 U.S.C. § 1983, filed by Dennis Burch ("Burch"), a West Virginia state prisoner who is incarcerated at the Huttonsville Correctional Center, in Huttonsville, West Virginia.[1] Also

---

[1] The undersigned notes that the Huttonsville Correctional Center is located within the jurisdiction of the United States District Court for the Northern District of West Virginia, not this court.  However, because the plaintiff's Complaint addresses the constitutionality of a state statute and names as defendants the members of the West Virginia Parole Board, which is a state government body headquartered in Charleston,

pending is Burch's Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1), a Motion for Appointment of Counsel (ECF No. 4), and a Motion for Certification of the Class (ECF No. 5).

The Complaint, which Burch seeks to file on behalf of all West Virginia state prisoners who are serving a life with mercy sentence[2] for a crime committed before July 10, 1997, challenges the constitutionality of the retroactive application of West Virginia Code § 62-12-13(e) ("the parole review statute") to such prisoners. Before July 10, 1997, the parole review statute, which was then codified in West Virginia Code § 62-12-13(a)(5), provided that "the [Parole] [B]oard shall *at least once a year* reconsider and review the case of every prisoner so eligible." W. Va. Code § 62-12-13(a)(5) (1988) (Emphasis added). However, on July 10, 1997, that section was amended to state in pertinent part: "the board may reconsider and review parole eligibility within *three years* following the denial of parole of a person serving a life sentence with the possibility of parole." (hereinafter "the three year set-off").[3] W. Va. Code § 62-12-13(a)(5) (1997) (Emphasis added). This section was re-codified as W. Va. Code § 62-12-13(e) in 1999, and was again amended in 2015. Nonetheless, the applicable language concerning the three-year set-off remains the same as that quoted above. The amended statute has been applied to all prisoners serving life with mercy sentences.

---

West Virginia, which is within this court's jurisdiction, the undersigned believes that it is proper for this court to consider this matter. The West Virginia Parole Board is charged with the execution of the statute being challenged.

[2] As noted by Burch, a life with mercy sentence is a sentence of life with eligibility for parole after 15 years. (Complaint, ECF No. 2 at 4 n.5; Mot. for Certification of Class, ECF No. 5 at 2).

[3] As noted in *State ex rel. Carper v. W. Va. Parole Bd.*, 509 S.E.2d 864, 869 (W. Va. 1998), "a 'setoff' is a term used to describe the time until the next parole review is given by a parole board when it denies parole to a prisoner[.]"

Burch's Complaint asserts that the retroactive application of the 1997 amended statute to his 1996 crime[4], and those of all other prisoners with life with mercy sentences imposed for crimes that occurred before the amendment, violates the E*x Post Facto* Clause of the United States Constitution, Article I, § 10.  As his requested relief, Burch seeks a declaratory judgment that the retroactive application of the three-year set-off provision to the class of life with mercy inmates who committed their crimes before July 10, 1997 violates the federal e*x post facto* clause.  He further seeks an injunction requiring the Parole Board to hold annual parole hearings for such inmates and to grant any other relief the court deems appropriate.  (ECF No. 2 at 9).

Burch has also filed a motion for class certification, requesting that the court certify this as a class action under Rule 23(b)(2) on behalf of a class of similarly situated persons, that being those West Virginia state prisoners serving a life with mercy sentence for a crime committed before July 10, 1997.  (ECF No. 5).  Burch has also filed a Motion for Appointment of Counsel (ECF No. 4), in which he asserts that this matter presents exceptional circumstances warranting the court to appoint counsel to represent him and the class.

## **STANDARD OF REVIEW**

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B), the court is obliged to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can

---

[4] Burch is serving a life with mercy sentence for murder.  According to the Complaint, he has been denied parole on three occasions, in April 2012, October 2013, and October 2016.  He unsuccessfully challenged the 2012 and 2013 denials in state habeas corpus proceedings, and administratively appealed the 2016 denial without success prior to filing the instant lawsuit.  (ECF No. 2 at 3-7).

be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A. This screening is done prior to consideration of an Application to Proceed without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory. *Denton v. Hernandez*, 504 U.S. 25 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the

4

purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.

\* \* \*

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Because Burch's Complaint fails to state a claim upon which relief can be granted, the defendants have not been served with process and should not be required to appear or defend this matter. Likewise, Burch's Motion for Appointment of Counsel (ECF No. 4) and Motion for Certification of Class (ECF No. 5) should be summarily denied.

## ANALYSIS

### A.    The Complaint fails to state a colorable constitutional claim.

Burch asserts that he presents a colorable *ex post facto* claim under the Supreme Court's decisions in *California Dep't of Corrections v. Morales*, 514 U.S. 499 (1995) and *Garner v. Jones*, 529 U.S. 244 (2000), which held that "a decrease in the frequency of parole hearings violates *ex post facto* principles if the decrease presents a "'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" G*arner*, 529 U.S. at 250 (quoting *Morales*, 514 U.S. at 509). (ECF No. 4 at 3).

In *Morales*, the Supreme Court reviewed a California statute that similarly changed the frequency of hearings for reconsideration of parole for prisoners convicted

of more than one homicide from every year to up to every three years. The Court found that the amendment did not modify the statutory punishment imposed for any particular offense, nor did it alter the standards for determining an inmate's initial parole eligibility date or his suitability for parole. The Court further found that the statute vested the parole board with discretion to determine, on a case-by-case basis, how often to set reconsideration hearings, within the new three-year limit, and to consider requests for earlier reconsideration based upon a change of circumstances. Thus, the Court found that the decrease in the frequency of parole suitability proceedings "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." *Id.* at 509.

In *Garner*, the Supreme Court applied this same rationale in finding that the retroactive application of a rule changing the frequency of parole reconsideration hearings from every three years to up to <u>eight</u> years did not violate *ex post facto* principles. Again, the Court found the amended rule did not pose a significant risk of prolonging a prisoner's incarceration because it allowed the parole board to set reconsideration dates according to the likelihood that review would result in meaningful consideration of the inmate's suitability for release and, further, the rule allowed for the flexibility of shortening reconsideration time based upon a change in circumstances.

In the instant matter, Burch asserts, upon information and belief, that the granting of parole for life-with-mercy inmates is correlated to the *number* of parole hearings the inmate has had, and that, before July 10, 1997, life-with-mercy inmates who were denied parole had deferral periods of less than one year on average, whereas, subsequent to July 10, 1997, life-with-mercy inmates who are denied parole have had

deferral periods greater than one year on average. (ECF No. 2 at 8, ¶¶ 10-14).  Thus, he contends that the retroactive application of the 1997 amendment to the class of life-with-mercy inmates "produces a significant risk of increasing the measure of punishment for those crimes to violate the Ex Post Facto Clause . . . ." (*Id.*, ¶ 15).  In essence, Burch appears to be asserting that because these prisoners will not be seen by the parole board as often, there is an increased risk that they will not be granted parole as quickly as they would have under the old law.  Burch contends that discovery will be necessary to develop evidence to support his contentions, and that the appointment of counsel will facilitate this discovery process, which "will include sensitive parole files of past and present life-with-mercy inmates to compare the periods of incarceration that those inmates served before parole was granted."  (*Id.* at 8 n.8; ECF No. 4 at 3).

However, the decision of the West Virginia Supreme Court of Appeals (the 'SCAWV") in *State ex rel. Carper v. W. Va. Parole Bd.*, 509 S.E.2d 864 (W. Va. 1998) forecloses Burch's *ex post facto* challenge to W. Va. Code § 62-12-13(e) and his request for class certification.  Consequently, because Burch has not asserted a colorable claim for relief, his request for appointment of counsel should also be denied.

In *Carper*, the SCAWV set forth certain due process requirements that must be satisfied when enforcing the amended parole review statute retroactively.  *Carper* addressed a similar *ex post facto* challenge under the equivalent provision of the West Virginia Constitution and found that, so long as the Parole Board makes individual determinations when deciding on the frequency of future parole hearings after an initial denial of parole, retroactive application of the amended statute would be constitutionally permissible.  Such individualized determinations mirror those that the Supreme Court

found allowable under the federal *ex post facto* clause in *Morales* and *Garner*.  Burch does not, and essentially cannot, distinguish the West Virginia statute from those upheld in *Morales* and *Garner*.  Rather, he simply argues that *Morales* should be overruled because he believes it is being applied too broadly.  Specifically, he states:

> Unlike the multiple-murderer statute at issue in *Morales*, West Virginia's hearing-deferral statute applies to the *entire* population of prisoners who are serving a life sentence with the possibility of parole.  Nothing suggests that "the likelihood of release on parole is quite remote," *Morales*, 514 U.S. at 510, for such a broad class of prisoners.

(ECF No. 4 at 5).  However, this federal district court is bound by the decisions of the United States Supreme Court and the undersigned does not believe that the instant matter is distinguishable from *Morales* in this context, so long as the due process measures discussed in *Carper* are met.

In order to succeed with his *ex post facto* claim, Burch must demonstrate that application of the amended statute will, in effect, result in a longer period of incarceration. He has not made such a showing.  There is no federal constitutional right to parole. *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991).  While the SCAWV has recognized that inmates have a "reasonable expectation" of release on parole where objective criteria are met, *see Tasker v. Mohn*, 267 S.E.2d 183, 187 (W. Va. 1980), the Parole Board retains discretion to determine when it is in the state's best interest for such release.  Moreover, the amended statute does not alter the timing for initial parole consideration and it permits the Parole Board to reconsider the denial of parole at any time within three years, with the discretion to expedite the same where deemed appropriate, on a case-by-case basis.

Taken together, these factors demonstrate that West Virginia prisoners serving life with mercy sentences are not subject to longer punishment as a result of the 1997 amendment of the parole review statute. The assertion that the 1997 amendment has or will lengthen Burch's period of incarceration, or that of any of the other putative class members, simply by this change in hearing frequency, is too speculative and attenuated. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Burch has failed to state a plausible violation of the *Ex Post Facto* Clause in Article I, § 10 of the United States Constitution.

### B.    This matter is inappropriate for class certification.

Burch seeks the certification of a class of inmates whom he claims are similarly situated and affected by the retroactive application of the 1997 statutory amendment at issue here. He has the burden of establishing each of the requirements for such certification. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006).

As noted in Burch's Motion for Certification of Class:

"Rule 23(a) [of the Federal Rules of Civil Procedure] requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, 'the class action must fall within one of the three categories enumerated in Rule 23(b).'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (citation omitted). Also, the Fourth Circuit has "recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable," *id.,* at 358 (citations omitted), often referred to as the "ascertainability" requirement, *ibid*; *cf* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class . . . .")

(ECF No. 5 at 1). Burch asserts that the proposed class in this action is easily ascertainable, as it consists of all West Virginia prisoners who are serving a sentence of

life with mercy for a crime committed before July 10, 1997.[5]  (*Id.* at 2).

Burch further asserts that the class is so numerous that joinder of all members is impractical.  He contends that, as of 2016, there were approximately 405 West Virginia prisoners serving life with mercy sentences.  (*Id.* at 3) (citing *W. Va. Div. of Corr. 2016 Annual Report* 53).  He further recognizes that some of these prisoners would fall outside of the class because their crimes were committed after July 10, 1997.  Nevertheless, Burch asserts that it is reasonable to assume that the size of the class would exceed 100 prisoners, which has been held to be sufficient to meet the numerosity requirement.  *See, e.g., Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) ("a class as large as 74 persons is well within the range appropriate for class certification"); *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. Apr. 27, 2005) (citing C. Wright et al., 7A, *Fed. Practice and Procedure* § 1762 (2d ed. 1986) ("many courts have found that classes with fewer than thirty members do not justify a class action")); *Soutter v. Equifax Info. Serv., LLC*, 307 F.R.D. 183, 199 (E.D. Va. 2015) (citing W. Rubenstein, *Newberg on Class Actions* § 3:11 (5th ed. 2013) ("joinder is generally deemed practicable in classes with fewer than 20 members and impracticable in classes with more than 40 members")).  (ECF No. 5 at 3).

Burch further contends that there are common questions of law and fact that warrant resolution of this matter as a class action.  As noted in the class certification

---

[5]  Burch further suggests that a life with mercy sentence is available in five circumstances in West Virginia; that is, when a prisoner is convicted of  (1) First Degree Murder under W. Va. Code § 62-3-16; (2) First Degree Robbery under W. Va. Code § 61-2-12; (3) Kidnapping under W. Va. Code § 61-2-14a; (4) Treason, under W. Va. Code § 61-1-2; and (5) when a prisoner has been found to be a Third-Felony Recidivist (Habitual Life) under W. Va. Code § 61-11-18(c).  Burch states that data from the West Virginia Division of Corrections would be easily obtainable to identify the class members.

motion, "'[a] single common question will suffice, but it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Adair, supra*, 764 F.3d at 360.  (*Id.* at 4).  Burch contends that the issue of whether the retroactive application of the 1997 amendment to the parole eligibility statute creates a significant risk of increasing the measure of punishment attached to the covered crimes is a common question of law that is driven by evidence that will "generate common answers apt to drive the resolution of the litigation."  (*Id.*)

Burch further asserts that his claim is typical of those of the class membership and that his "interest in prosecuting his own case simultaneously tends to advance the interests of the absent class members" and, thus, the typicality standard is satisfied.  *See Scott v. Clarke*, 61 F. Supp.3d 569, 587 (W. D. Va. 2014).  Finally, Burch contends that he can fairly and adequately represent the interests of the class as a whole, and that the Complaint seeks declaratory and injunctive relief that would be applicable to the entire class.  Therefore, he argues that certification under Rule 23(b)(2) is appropriate.[6]  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011).

However, the individualized determinations required by *Carper* render this matter inappropriate for class action treatment.  Any potential claim of an *ex post facto* violation based upon the retroactive application of the 1997 amendment would be too individualized to the circumstances of a particular prisoner and, thus, factually unique.  Accordingly, certification of a class as requested by Burch is not appropriate because he cannot meet the requirements of "commonality," "typicality," and "fair and adequate

---

[6]  Rule 23(b)(2) provides that class action status is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).

representation."

Consequently, the undersigned proposes that the presiding District Judge **FIND** that Burch has not demonstrated that this matter is appropriate for class certification under Rule 23.

### C.    Burch's Motion for Appointment of Counsel should be denied.

Burch correctly recognizes that there is no right to appointment of counsel in a civil matter such as this and that a class action may not be brought by a *pro se* plaintiff. *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984); *Oxendine v. Williams*, 509 F.2d 1405 (4th Cir. 1975).  (ECF No. 4 at 2).  In *Oxendine*, the Fourth Circuit stated, "we consider the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others."  509 F.2d at 1407.  Additionally, Rule 23 provides that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g).  Thus, Burch requests that the court exercise its discretion to appoint an attorney to represent the putative class, with Burch serving as the class representative.  (ECF No. 4 at 2).

However, as the Fourth Circuit has instructed, courts should "exercise this power 'only in exceptional circumstances.'  Whether the circumstances are exceptional depends on 'the type and complexity of the case, and the abilities of the individual bringing it.'" *Lowery v. Bennett*, 492 F. App'x 405, 411 (4th Cir. Aug. 9, 2012) (quoting *Whisenant*, *supra*, 739 F.2d at 163); *Zuniga v. Effler*, 474 F. App'x 225 (4th Cir. June 21, 2012) ("Appointment of counsel is proper 'if it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it' or some other exceptional circumstance is present.") (quoting *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978)). (ECF No. 4 at 2).

In the instant matter, Burch has not demonstrated a colorable individual claim or any actionable claim on behalf of the putative class. Thus, the undersigned is recommending that the presiding District Judge deny class certification. Likewise, appointment of counsel is not required and the undersigned further proposes that the presiding District Judge **FIND** that Burch has not demonstrated exceptional circumstances that would justify the appointment of counsel herein.

### **RECOMMENDATION**

As noted above, in *Twombly* and *Iqbal*, the Supreme Court held that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the Complaint as true and in the light most favorable to the plaintiff, the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that the Complaint herein does not contain allegations that could plausibly give rise to a present entitlement to relief by plaintiff Dennis Burch, on his own behalf, or on behalf of the proposed class. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the Complaint fails to state a claim upon which relief can be granted.

Therefore, for the reasons stated herein, and pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B) and 1915A, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the Complaint (ECF No. 2), **DENY** Burch's Application to Proceed without Prepayment of Fees and Costs (ECF No. 1), with a waiver of the applicable filing fee, and **DENY** Burch's Motion for Appointment of Counsel (ECF No. 4) and his Motion for Certification of Class (ECF No. 5).

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to plaintiff, Dennis Burch.

February 26, 2018

Dwane L. Tinsley
United States Magistrate Judge

14