IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DENNIS BURCH and
The Class of Similarly Situated Persons
Being Those State of West Virginia Prisoners
Serving a Sentence of Life with the Possibility of Parole
for a Crime Committed Before July 10, 1997,

       Plaintiffs,

v.                                    Case No. 2:17-cv-03311

BENITA MURPHY, Chairperson,
West Virginia Parole Board,
MICHAEL TRUPO,
CAROLE B. GREENE, and
PEGGY POPE, Members, West Virginia Parole Board,
all in their official capacities,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This civil action is assigned to the Honorable Thomas E. Johnston, Chief United

States District Judge, and it is referred to the undersigned United States Magistrate Judge

for submission of proposed findings and a recommendation for disposition, pursuant to

28 U.S.C. § 636(b)(1)(B).  Pending before the court is the defendants' Motion to Dismiss

Plaintiff's Complaint, or in the alternative, Motion to Strike Class Action Allegations (ECF

No. 24).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 16, 2017, the plaintiff, Dennis Burch ("Burch"), filed the instant Complaint

under 42 U.S.C. § 1983, claiming that the retroactive application of the 1997 amendment

of the West Virginia Code changing the statutory parole hearing set-off[1] period for prisoners serving life with mercy sentences from at least annual review to up to three years, violates the *Ex Post Facto* Clause of the United States Constitution, Article I, § 10. "One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249-50 (2000) (citing *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)). As further noted by the defendants herein, retroactive changes in laws affecting the parole of prisoners may "in some instances" violate the *Ex Post Facto* Clause. *Id.* at 250 (citing *Lynce v. Mathis*, 519 U.S. 433, 445-56 (1997)). (ECF No. 25 at 4). The controlling inquiry is whether the retroactive application of the law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 509 (1995).

Before July 10, 1997, the West Virginia parole review statute, which was then codified in West Virginia Code § 62-12-13(a)(5), provided that "the [Parole] [B]oard shall *at least once a year* reconsider and review the case of every prisoner so eligible." W. Va. Code § 62-12-13(a)(5) (1988) (Emphasis added). However, on July 10, 1997, that section was amended to state, in pertinent part: "the board may reconsider and review parole eligibility within *three years* following the denial of parole of a person serving a life sentence with the possibility of parole" (hereinafter "the three-year set-off"). W. Va. Code § 62-12-13(a)(5) (1997) (Emphasis added). This section was re-codified as W. Va. Code § 62-12-13(e) in 1999, and was again amended in 2015. Nonetheless, the applicable

---

[1] As noted in *State ex rel. Carper v. W. Va. Parole Bd.*, 509 S.E.2d 864, 869 (W. Va. 1998), "a 'setoff' is a term used to describe the time until the next parole review is given by a parole board when it denies parole to a prisoner[.]"

language concerning the three-year set-off remained the same.  The amended statute has been applied to all prisoners serving life with mercy sentences.

Burch contends that, as applied to him,[2] and all other prisoners sentenced to serve life with mercy sentences prior to July 10, 1997, the change in the set-off period created a "sufficient risk" of increased punishment.  As his requested relief, Burch seeks a declaratory judgment that the retroactive application of the three-year set-off provision to the class of life with mercy inmates who committed their crimes before July 10, 1997 violates the federal E*x Post Facto* Clause.  He further seeks an injunction requiring the Parole Board to hold annual parole hearings for such inmates and to grant any other relief the court deems appropriate.  (ECF No. 2 at 9).

Burch also filed a motion for class certification, requesting that the court certify this as a class action under Rule 23(b)(2) on behalf of a class of similarly situated persons, that being those West Virginia state prisoners serving a life with mercy sentence for a crime committed before July 10, 1997.  (ECF No. 5).  Burch filed a companion Motion for Appointment of Counsel (ECF No. 4), in which he asserts that this matter presents exceptional circumstances warranting the court to appoint counsel to represent him and the class.

On February 26, 2018, the undersigned submitted a prior Proposed Findings and Recommendation (ECF No. 11) ("First PF&R"), recommending dismissal of Burch's

---

[2] Burch is serving a life with mercy sentence for murder.  According to the Complaint, he was denied parole on three occasions, in April 2012, October 2013, and October 2016.  He unsuccessfully challenged the 2012 and 2013 denials in state habeas corpus proceedings, and administratively appealed the 2016 denial without success prior to filing the instant lawsuit.  (ECF No. 2 at 3-7).  On October 29, 2018, Burch advised the court that he was again denied parole on October 22, 2018, and his next parole hearing is scheduled in October of 2019.

Complaint for failure to state a claim upon which relief can be granted and denial of the companion motions for class certification and appointment of counsel.  The First PF&R proposed a finding that, under the Supreme Court's decisions in *California Dep't of Corrections v. Morales*, 514 U.S. 499 (1995) and *Garner v. Jones*, 529 U.S. 244 (2000), and the decision of the West Virginia Supreme Court of Appeals ("the WVSCA") in *State ex rel. Carper v. W. Va. Parole Bd.*, 509 S.E.2d 864 (W. Va. 1998), so long as the Parole Board makes individual determinations when deciding on the frequency of future parole hearings after an initial denial of parole, retroactive application of the amended statute was not an *ex post facto* violation.

Burch filed objections to the First PF&R (ECF No. 13).  On March 28, 2018, the presiding District Judge sustained Burch's objection based on a new allegation not contained in the Complaint that "the safeguards mandated by *Carper* have *never* been met by the Board."  (ECF No. 7 at 7; ECF No. 16 at 4-5) (emphasis in original).  The Court's Memorandum Opinion and Order stated:

> In light of Plaintiff's argument that the retrospective application of the amended statute to him and similarly situated inmates violates the *Ex Post Facto* Clause because due process requirements set forth by the WVSCA in *Carper* have not been followed by the Board of Parole, the Court finds that this supplemental allegation from the objection warrants a responsive pleading from Defendants.  Consequently, the Complaint should not be dismissed at this stage when the record is wholly undeveloped as to that argument, and the Court declines to adopt the PF&R on that basis.  Because this finding effectively moots the other portions of the PF&R, the Court finds it unnecessary to analyze the merits of Plaintiff's other objections and they will be overruled as moot.

(ECF No. 16 at 4-5).  Thereafter, the undersigned granted Burch's Application to Proceed Without Prepayment of Fees and Costs and ordered service of process on the defendants, along with a copy of the presiding District Judge's Memorandum Opinion and Order.

4

On June 19, 2018, the defendants filed the instant Motion to Dismiss Plaintiff's Complaint or, in the alternative, to Strike Class Action Allegations (ECF No. 24) and a Memorandum of Law in support thereof (ECF No. 25). On July 30, 2018, as ordered by the court, Burch filed a response to the defendants' motion (ECF No. 39), and on August 13, 2018, the defendants filed a reply (ECF No. 40). This matter is ripe for adjudication.

## STANDARD OF REVIEW

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

5

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* at 678.

Attached to the Complaint herein are various documents relating to Birch's denial of parole and his attempts to receive reconsideration thereof.  While, generally, matters outside of the pleadings may not be considered on a motion to dismiss, a court may consider the factual allegations in the Complaint and any exhibits attached thereto that are authentic and integral to the Complaint.  *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *see also* Fed. R. Civ. P. 10(c).

## ANALYSIS

### A.    The Complaint fails to state a colorable constitutional claim.

The defendants' motion to dismiss asserts that the Complaint should be dismissed for failure to state a claim upon which relief can be granted.  Specifically, the defendants contend that Burch's *ex post facto* claim is foreclosed by the Supreme Court's decisions in *Morales* and *Garner* because Burch cannot demonstrate that the amended statute at issue presents a "'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" G*arner*, 529 U.S. at 250 (quoting *Morales*, 514 U.S. at 509).

In *Morales*, the Supreme Court reviewed a California statute that changed the frequency of parole hearings for prisoners convicted of more than one homicide from every year to up to every three years.  The Court found that the amendment did not modify

the statutory punishment imposed for any particular offense, nor did it alter the standards for determining an inmate's initial parole eligibility date or his suitability for parole. The Court further found that the statute vested the parole board with discretion to determine, on a case-by-case basis, how often to set reconsideration hearings within the new three-year limit, and to consider requests for earlier reconsideration based upon a change of circumstances. Thus, the Court found that the decrease in the frequency of parole suitability proceedings "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." *Id.* at 509.

In *Garner*, the Supreme Court applied this same rationale in finding that the retroactive application of a rule changing the frequency of parole reconsideration hearings from every three years to up to <u>eight</u> years did not, on its face, violate *ex post facto* principles. Again, the Court focused on the discretion of the parole board to set reconsideration dates according to the likelihood that review would result in meaningful consideration of the inmate's suitability for release and, further, that the rule allowed for the flexibility of shortening reconsideration time based upon a change in circumstances. The defendants contend that "[i]t is clear from *Garner* that a parole board's discretion is paramount." (ECF No. 25 at 7). Their Memorandum of Law further states:

> The Court remarked that the "States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release[,]" and further that the "Ex Post Facto Clause should not be employed for 'micromanagement of an endless array of legislative adjustments to parole and sentencing procedures." [*Garner*, 529 U.S. at 252] (quoting *Morales*, 514 U.S. at 508). Within its discretion, a parole board "may set reconsideration dates according to the likelihood that a review will result in meaningful considerations as to whether an inmate is suitable for release." *Id.* at 254. Such discretion enables a parole board to

> put its resources to better use by concentrating its efforts on those prisoners identified as having a good possibility of early release. *Id.* And because of the "obligation[] to change and adapt based on experience, " that discretion "is subject to changes in the manner  in which it is informed and then exercised" (i.e., legislative amendments). *Id.* at 253.
>
> Here, Plaintiff makes little more than a bare assertion that W. Va. Code § 62-12-13 violates the *Ex Post Facto* Clause. Clearly, under *Garner* and *Morales*, this is not enough. Plaintiff must plead facts that show that the amendments to West Virginia Code § 62-12-13 will create a significant risk that his punishment will be prolonged – that is, that the delay in parole consideration will actually delay his release. But Plaintiff has not made, and cannot make, this showing.

(*Id.* at 7). The defendants further contend that the amended West Virginia law mirrors the statutes at issue in *Morales* and *Garner* in respect to the discretion afforded to the Parole Board and the opportunity for reconsideration for expedited review.[3]

Consequently, the defendants assert that the Parole Board acted well within its discretion to set Burch's parole hearings at intervals greater than one year, and further contend that the Board "explained the reasons for doing so in its Parole Decision Summary, and afforded Plaintiff the opportunity to request an earlier hearing (which he did)." (ECF No. 25 at 8) (citing to ECF No. 2 at 13-18). Thus, the defendants further assert that the amendment of the West Virginia statute is consistent with the principles of *Morales* and *Garner* and that Burch has failed to establish that the longer set-off period presents a significant risk of prolonged incarceration or increased punishment. (*Id.* at 8-9).

---

[3] The undersigned notes that the amended statute itself does not contain the language concerning the opportunity for expedited review. Rather, that requirement is presently contained in the companion regulations contained in W. Va. C.S.R. section 92-1-8.1.d.2, as required by the WVSA's decision in *Carper*, discussed *infra*.

However, Burch now attempts to factually distinguish the instant case from *Morales* and *Garner*. He contends that the statutes at issue in both of those cases involved a narrow group of prisoners, those who had been convicted of multiple homicide offenses, versus the amended West Virginia statute, which affects *all prisoners serving a life with mercy sentence*.[4] Burch contends that there are five categories of prisoners subject to a life with mercy sentence, consisting of upwards of 400 prisoners.[5]

Burch further contends that the Supreme Court recognized that "the likelihood of release on parole [was] quite remote" for the group of prisoners at issue in *Morales* and *Garner. See Morales,* 514 U.S. at 510-11 ("[T]he amendment 'was seen as a means "to relieve the [Board] from the costly and time consuming responsibility of scheduling parole hearings for *prisoners who have no chance of being released.*"). (ECF No. 39 at 9). Conversely, Burch contends that the amendment at issue herein has a much more significant "practical effect" on the West Virginia prisoners to whom it applies retroactively. (*Id.* at 10). This fact was acknowledged by the WVSCA in its decision in *Carper*:

> Unlike the statute at issue in the *Morales* case, W. Va. Code, 62-12-13(a)(5) [1997] applies to the entire population of prisoners in this state who are serving a life sentence with the possibility of parole (approximately 300 persons). Nothing in the record of the instant case suggests that the "likelihood of parole" for members of this class is "quite remote." *Morales, supra.* Indeed, it is certain that a significant number (if not the majority) of the members of this class will at some time be released on parole.

---

[4] Burch's contention that the amended Georgia statute at issue in *Garner* applied only to prisoners convicted of multiple homicides is inaccurate. The amended Georgia statute, like the West Virginia statute herein, applied to all persons serving life with mercy sentences. The original plaintiff in *Garner*, however, was serving two life with mercy sentences for committing two homicides.

[5] Burch suggests that a life with mercy sentence is available when a prisoner is convicted of the following offenses: (1) First Degree Murder under W. Va. Code § 62-3-16; (2) First Degree Robbery under W. Va. Code § 61-2-12; (3) Kidnapping under W. Va. Code § 61-2-14a; (4) Treason, under W. Va. Code § 61-1-2; and (5) when a prisoner has been found to be a Third-Felony Recidivist (Habitual Life) under W. Va. Code § 61-11-18(c).

> Additionally, the 1997 proviso added to W. Va. Code, 62-12-13(a)(5) [1997] contains no requirement that the Board articulate reasons for giving a prisoner a longer than 1 year setoff. Nor does our statute contain provisions allowing a prisoner who is given such a setoff to ask for a review hearing at an earlier date, if conditions change.

*Carper, supra*, 509 S.E.2d at 869–70.

In *Carper*, the SCAWV set forth certain due process requirements that must be satisfied when enforcing the amended parole review statute retroactively. *Carper* addressed a similar *ex post facto* challenge under the equivalent provision of the West Virginia Constitution and found that, so long as the Parole Board makes individual determinations when deciding on the frequency of future parole hearings after an initial denial of parole, retroactive application of the amended statute would be constitutionally permissible. These requirements are also set forth in the applicable regulations governing the decisions of the West Virginia Parole Board. Specifically, the Code of State Regulations provides in pertinent part:

> In the case of an inmate serving a sentence designated in the committing court's sentencing/commitment order as "Life with Mercy" in which case subsequent interviews may be scheduled at up to 36 month intervals. Such extension beyond 12 months shall be made only if the Board makes a case specific individualized determination with reasons and findings on the record showing why such extension will cause no detriment or disadvantage to the inmate. An inmate receiving such extension shall be entitled to submit information to the Panel during that extension requesting an earlier parole interview.

W. Va. Code R. § 92-1-8.1.d.2. Such individualized determinations mirror those that the Supreme Court found allowable under the federal *ex post facto* clause in *Morales* and *Garner*.

Burch, however, now asserts that the West Virginia Parole Board has not been complying with the dictates of *Carper*, such that a "case-specific individualized

determination" has not been given to prisoners who have been denied parole and given a set-off of more than one year. Thus, Burch appears to be arguing that such failure exposes the purported class of West Virginia inmates to whom the amended statute is being retroactively applied to an *ex post facto* violation.

Burch's Complaint indicates that he filed a writ of habeas corpus concerning his denial of parole in October of 2013. Ultimately, the WVSCA affirmed the denial of his habeas corpus petition and made specific findings concerning the Parole Board's decision. Significantly, the WVSCA made the following findings concerning the three-year set-off Burch received:

> Finally, petitioner contends that the board acted arbitrarily in denying him parole and failed to base its decision to delay his next parole interview until 2016 on a "case-specific individualized determination." Syl. Pt. 3, in part, *Carper,* 203 W. Va. at 585, 509 S.E.2d at 886. We disagree. In its report, the DOC informed the board that the police collected a number of witness statements that petitioner threatened the victim prior to the incident during which petitioner shot him. When the board questioned petitioner about those accounts at his parole interview, petitioner denied that he threatened the victim. We note that the board was able to see petitioner and observe his demeanor during the interview. Thus, we find that the board was in a position to judge petitioner's credibility. . . . We note the board's finding that it was "[petitioner's] interview" that "has not convinced this board [that petitioner's] release would be compatible [with] or in the best interests of . . . society." We note that, according to petitioner's psychological evaluation, petitioner is capable of "attempt[ing] to create an unrealistically favorable impression of himself." The report noted that individuals with similar personality profiles are generally described "as being immature, self-centered, [and] lacking in insight[.]" Therefore, we find that petitioner's responses at his parole interview – which both contradicted the record and reflected tendencies observed during petitioner's psychological evaluation – provided the board with an adequate, case-specific basis for its decision. Accordingly, we conclude that the board did not abuse its discretion in denying parole to petitioner and delaying his next parole interview until 2016.

*Burch v. Plumley*, No. 15-1091, 2016 WL 4579072, at *4 (Sept. 2, 2016). Thus, although

Burch did not attach the 2013 Parole Decision Summary to his Complaint, the WVSCA appears to agree that the West Virginia Parole Board's decision met the *Carper* criteria of a "case-specific individualized determination" and this court should not second-guess the findings of the state court concerning interpretation of its own laws and regulations.

Additionally, Burch attached to his Complaint the Parole Board's decision denying him parole in October of 2016 and giving him a two-year set-off. That decision found, in pertinent part, as follows:

> The Board has carefully considered all of the factors disclosed in your record, considering the positive as well as the negative factors and various official reports including court documents and the results of your personal interview. It is our final decision that you are not prepared to reintegrate back into society. Your interview failed to convince the Board your release on parole would be compatible with – or in the best interest of – society in general.
>
> In the Board's opinion you do not deserve the merciful consideration of parole sooner than: 24 Months
>
> You have the opportunity to submit information to the Board during this time to request a review before the expiration of this period.

(ECF No. 2 at 4, 17 [Addendum 7]). The Complaint and attached documentation further indicate that Burch administratively appealed this decision and requested reconsideration of the two-year deferral, which was denied on January 5, 2017. (ECF No. 2 at 4, 13 [Addendum 3], and 22 [Addendum 12]).

The defendants noted the apparent similarities between the 2013 and 2016 hearings, and assert that, in 2016, the West Virginia Parole Board again provided Burch with meaningful review and a determination that passed constitutional muster. Their reply contends:

First, Plaintiff was afforded a full and fair hearing before the Parole Board, which entailed Plaintiff's testimony and that of representatives for Plaintiff and for his victim. Following deliberation by its members, the Parole Board issued its decision to deny Plaintiff parole, and that decision was reduced to writing in a two-page Parole Decision Summary (*See* Doc. No. 2 at pp. 17-18.) Unlike the formulaic "checklist" decision rendered in *State ex rel. Stollings v. Haines*, 569 S.E.2d 121 (W. Va. 2002), the decision summary here points out the reasons for Plaintiff's two-year setoff, including the Parole Board's findings that: (1) Plaintiff is not prepared to reintegrate back into society; (2) his interview failed to demonstrate that this [sic; his] rehabilitation is complete, and concomitantly, he would benefit from continued incarceration; and (3) his continued incarceration will serve to protect the public from possible future violence. (*See* Doc. No. 2 at pp. 17-18). Simply because the Board did not state its reasons in the very same sentence or paragraph as its determination to set Plaintiff at two years instead of one, does not mean those reasons should be ignored by this Court.

(ECF No. 40 at 7). To the extent that Birch contends that he has made a sufficient demonstration that the West Virginia Parole Board has *never* complied with *Carper*, he has not even demonstrated that the Parole Board failed to comply with the *Carper* requirements in his own case. He is merely splitting hairs.

Burch further asserts that granting of parole for West Virginia life-with-mercy inmates is correlated to the *number* of parole hearings the inmate has had, and that, before July 10, 1997, life-with-mercy inmates who were denied parole had deferral periods of less than one year on average, whereas, after July 10, 1997, life-with-mercy inmates who are denied parole have had deferral periods greater than one year on average. (ECF No. 2 at 8, ¶¶ 10-14). Thus, he summarily contends that the retroactive application of the 1997 amendment to the class of life-with-mercy inmates "produces a significant risk of increasing the measure of punishment for those crimes to violate the Ex Post Facto Clause . . . ." (*Id.*, ¶ 15). He repeats this contention in his Response to the defendants' Motion to Dismiss. (ECF No. 39 at 5).

13

In essence, Burch asserts that simply because these prisoners will not be seen by the parole board as often, there is an increased risk that they will not be granted parole as quickly as they would have under the old law. Burch contends that discovery will be necessary to develop evidence to support his contentions, and that the appointment of counsel will facilitate this discovery process, which "will include sensitive parole files of past and present life-with-mercy inmates to compare the periods of incarceration that those inmates served before parole was granted." (*Id.* at 8 n.8; ECF No. 4 at 3).

However, in order to succeed with his *ex post facto* claim, Burch must demonstrate a *significant* risk that application of the amended statute will, in effect, result in a longer period of incarceration. He has not made such a showing. There is no federal constitutional right to parole. *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991). While the WVSCA has recognized that inmates have a "reasonable expectation" of release on parole where objective criteria are met, *see Tasker v. Mohn*, 267 S.E.2d 183, 187 (W. Va. 1980), the Parole Board retains discretion to determine when it is in the state's best interest for such release.

Additionally, the amended statute does not alter the timing for initial parole eligibility and it permits the Parole Board to reconsider the denial of parole at any time within three years, with the discretion to expedite the same where deemed appropriate, on a case-by-case basis. Thus, the amended West Virginia statute and its supporting regulations do not, by their own terms, show a significant risk of longer punishment. Moreover, the assertion that the 1997 amendment has or will lengthen Burch's period of incarceration, or that of any of the other putative class members, simply by this change in hearing frequency, is too speculative and attenuated. This court should not involve itself

14

in "judicial 'micromanagement' of . . . legislative adjustments to parole . . . procedures."
*Morales*, 514 U.S. at 508.

Consequently, Burch has not shown that the amended West Virginia statute will have the effect of prolonging his punishment either on the face of the statute or as applied to his specific circumstances. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Burch has failed to state a plausible violation of the *Ex Post Facto* Clause in Article I, § 10 of the United States Constitution and his Complaint should be dismissed for failure to state a plausible claim for relief.

### B.    This matter is inappropriate for class certification.[6]

Burch also seeks the certification of a class of inmates whom he claims are similarly situated and affected by the retroactive application of the 1997 statutory amendment at issue here. In light of the proposed finding that the Complaint fails to state a plausible claim for relief on behalf of Burch, the undersigned further propose that the presiding District Judge **FIND** that this matter also may not be pursued as a class action. Nevertheless, should the presiding District Judge disagree with the recommendation of dismissal, the undersigned also addresses the class certification issue and will propose a ruling concerning the defendants' motion to strike the class action allegations.

The defendants' alternative Motion to Strike Class Action Allegations contends that Burch cannot meet the requisite criteria for a class action and requests that the Court

---

[6] The presiding District Judge's prior Memorandum Opinion and Order (ECF No. 16) denied Birch's Motion for Appointment of Counsel (ECF No. 4) and Motion for Certification of the Class (ECF No. 5) without prejudice and Burch did not re-file or renew such motions after service of process on the defendants. Thus, those motions are not presently pending before the court. Nevertheless, to the extent that the defendants' motion moves in the alternative to strike the class allegations contained in the Complaint (ECF No. 25 at 9-11), the undersigned will address the sufficiency of the class action allegations.

strike the class action allegations, if the Complaint survives their Motion to Dismiss.  The defendants specifically assert that Birch cannot adequately represent other plaintiffs in a *pro se* capacity, and, even if he were represented by counsel, he cannot properly serve as a class representative.  *See Oxendine v. Williams*, 509 F.2d 1405 (4th Cir. 1975); *Wiley v. W. Va. House of Delegates et al.,* No. 2:14-cv-10974, 2017 WL 663671, at *3 (S.D. W. Va. Jan. 30, 2017) (report and recommendation), *adopted by* 2017 WL 663350 (Feb. 17, 2017); *Bragg v. Sweeney*, No. 2:17-cv-03693, 2018 WL 1309730, at *4 (S.D. W. Va. Mar. 13, 2018) ("[T]here is not right to appointment of counsel in a civil matter such as this [Section 1983 action by a prisoner] and . . . a class action may not be brought by a *pro se* plaintiff.").  (ECF No. 25 at 13).[7]

Burch has the burden of establishing each of the requirements for class certification.  *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006).  The defendants contend that he has not met that burden.  (ECF No. 25 at 9-10).  Accordingly, the defendants' motion further asserts that the court should strike the class action allegations from the Complaint.  The motion states:

> "[A] court may grant a motion to strike class allegations where the pleading makes clear that the proposed class cannot be certified and no amount of discovery would change that determination."  *Waters v. Electrolux Home Prod., Inc.*, Civ. Action No. 5:13-cv-151, 2016 WL 3926431, *4 (N.D. W. Va. July 18, 2016); *see also* Fed. R. Civ. P. 23(d)(1)(D) ("[T]he court may issue orders that . . . require the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.").  Striking class allegations before a plaintiff files a motion for class certification is not premature where it is unnecessary for the court "to probe behind the pleadings before coming to rest on the certification question."  *Waters*, 2016 WL 3926431 at *4 (quoting *Gen. Tel. Co. of Sw. v.*

---

[7]  It appears that defense counsel may have been unaware of Burch's prior motions as the defendants' motion further states that "Plaintiff has not even attempted to establish each of the requirements for class certification . . . ."  (ECF No. 25 at 9).  The undersigned will address the factors as addressed in Burch's prior motion.

*Falcon*, 457 U.S. 147, 161 (1982)); *see also Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (concluding that a motion to strike class allegations filed before a motion for class certification was not premature where class certification was facially improper); Fed. R. Civ. P. 23(c)(1)(A) (requiring a court to make a class certification determination "[a]t an early practicable time.").

(ECF No. 25 at 10).

The defendants motion further asserts that even if the Complaint's class allegations could survive the pleading stage, this matter should not be certified as a class action because Burch cannot satisfy the criteria for commonality and typicality. (*Id.* at 10-11). Specifically, they contend that "[t]ypicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Waters*, 2016 WL 3926431 at *5 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). (*Id.*) The defendants assert that, due to the discretion of the West Virginia Parole Board to set the time between parole hearings at any time up to three years on a case-by-case basis, Burch's claim is not typical of the entire class. (*Id.* at 11).

Likewise, concerning the commonality element, the defendants contend that "[a] question is not common . . . if the resolution 'turns on a consideration of the individual circumstances of each class member.'" *Stand Energy Corp. v. Columbia Gas Trans. Corp.*, No. 2:04-cv-0867, 2008 WL 3891219, at *9 (S.D. W. Va. Aug. 19. 2008) (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006)). The defendants maintain that the circumstances of each proposed class member herein are different, "and there is no way to determine whether Section 62-12-13(e) is applied improperly to any of them without looking at their "individual circumstances." (*Id.*) In fact, they state, "[i]t is

17

one of the very reasons that Section 62-12-13(e) survives under *Garner* and *Morales* in this case, as explained above." (*Id.*)

Burch's response first asserts that the defendants failed to recognize the Fourth Circuit's admonition that motions to strike under Rule 12(f) are generally disfavored. *See Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("[C]ourts have repeatedly emphasized that striking class allegations under Rule 12(f) is even more disfavored . . . ."). (ECF No. 39 at 14). Burch further acknowledges that, while he has the ultimate burden of satisfying the Rule 23 requirements for certification of the class, the defendants herein have allocated too high a burden for him at the pleading stage. (ECF No. 39 at 14). Rather, he contends:

> In a motion to dismiss class allegations, the *defendants have the burden* of demonstrating from the face of the plaintiffs' complaint that it will be *impossible* to certify the class alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove, analogous to the standard of review for motions brought pursuant to Rule 12(b)(6).

*Mungo v. CUNA Mut. Ins. Soc.*, No. 011-464, 2012 WL 3704924, at *4 (D.S.C. Aug. 24, 2012) (emphasis added) (citing *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991)). [Other citations omitted]. (ECF No. 39 at 14-15). Thus, Burch's response further asserts that the defendants' arguments concerning the class certification criteria are premature at the pleading stage because they are "'indistinguishable from the issues that would be decided in a motion for class certification.'" *Gibson v. Confie Ins. Group Holdings, Inc.*, No. 2:16-cv-02872, 2017 WL 2936219, 2017 U.S. Dist. LEXIS 105702 (D.S.C. July 10, 2017) (citation omitted). (*Id.* at 16).

Burch goes on to assert that certification of the class would not be impossible. (*Id.* at 16-20). As noted in Burch's prior Motion for Certification of Class, which was denied without prejudice:

> "Rule 23(a) [of the Federal Rules of Civil Procedure] requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, 'the class action must fall within one of the three categories enumerated in Rule 23(b).'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (citation omitted). Also, the Fourth Circuit has "recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable," *id.,* at 358 (citations omitted), often referred to as the "ascertainability" requirement, *ibid*; *cf* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class . . . .")

(ECF No. 5 at 1). Burch asserts that the proposed class in this action is easily ascertainable, as it consists of all West Virginia prisoners who are serving a sentence of life with mercy for a crime committed before July 10, 1997. (*Id.* at 2).

Burch further asserts that the class is so numerous that joinder of all members is impractical. He previously contended that, as of 2016, there were approximately 405 West Virginia prisoners serving life with mercy sentences. (*Id.* at 3) (citing *W. Va. Div. of Corr. 2016 Annual Report* 53). He further recognizes that some of these prisoners would fall outside of the class because their crimes were committed after July 10, 1997. Nevertheless, Burch's response asserts that it is reasonable to assume that the size of the class could be "approximately 300 persons," which has certainly been held to be sufficient to meet the numerosity requirement. *See, e.g., Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) ("a class as large as 74 persons is well within the range appropriate for class certification"); *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. Apr. 27, 2005) (citing C. Wright et al., 7A, *Fed. Practice and Procedure* § 1762 (2d ed. 1986)

("many courts have found that classes with fewer than thirty members do not justify a class action")); *Soutter v. Equifax Info. Serv., LLC*, 307 F.R.D. 183, 199 (E.D. Va. 2015) (citing W. Rubenstein, *Newberg on Class Actions* § 3:11 (5th ed. 2013) ("joinder is generally deemed practicable in classes with fewer than 20 members and impracticable in classes with more than 40 members")).  (ECF No. 5 at 3; ECF No. 39 at 16-17).

Burch further contends that there are common questions of law and fact that warrant resolution of this matter as a class action.  As noted in the class certification motion, "'[a] single common question will suffice, but it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Adair, supra*, 764 F.3d at 360.  (*Id.* at 4).  Burch contends that the issue of whether the retroactive application of the 1997 amendment to the parole eligibility statute creates a significant risk of increasing the measure of punishment attached to the covered crimes is a common question of law that is driven by evidence that will "generate common answers apt to drive the resolution of the litigation."  (*Id.*)

Burch further asserts that the defendants have misstated his claim, which is not based upon the fact that his last set-off was two years, but because he is exposed to a set-off that is "greater than 'a year,'" and "[t]hat claim is typical of all proposed class members."  (ECF No. 39 at 18-19).  Thus, as he previously contended, he believes his "interest in prosecuting his own case simultaneously tends to advance the interests of the absent class members" and, thus, the typicality and commonality elements are satisfied. *See Scott v. Clarke*, 61 F. Supp.3d 569, 587 (W.D. Va. 2014).  (*Id.*; *see also* ECF No. 5 at 5).  Burch further contends that whether set-offs for the proposed class members are made based upon "individualized circumstances" is a disputed issue that should not be

resolved at the pleading stage.  (*Id.* at 19).

Finally, Burch has contended that he can fairly and adequately represent the interests of the class, as a whole, because the Complaint seeks only declaratory and injunctive relief that would be applicable to the entire class.  While he acknowledges that this element may be the most problematic because of his present *pro se* status, he suggests that this issue is remedied by the appointment of counsel.  (ECF No. 39 at 18-20; *see also* ECF No. 4 at 2-3; ECF No. 5 at 6-7).

Burch recognizes that there is no right to appointment of counsel in a civil matter such as this and that a class action may not be brought by a *pro se* plaintiff.  *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984); *Oxendine v. Williams*, 509 F.2d 1405 (4th Cir. 1975).  (ECF No. 4 at 2).  Additionally, Rule 23 provides that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g).  Thus, Burch previously requested that the court exercise its discretion to appoint an attorney to represent the putative class, with Burch serving as the class representative.  (ECF No. 4 at 2).

However, as the Fourth Circuit has instructed, courts should "exercise this power 'only in exceptional circumstances.'  Whether the circumstances are exceptional depends on 'the type and complexity of the case, and the abilities of the individual bringing it.'" *Lowery v. Bennett*, 492 F. App'x 405, 411 (4th Cir. Aug. 9, 2012) (quoting *Whisenant*, *supra*, 739 F.2d at 163); *Zuniga v. Effler*, 474 F. App'x 225 (4th Cir. June 21, 2012) ("Appointment of counsel is proper 'if it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it' or some other exceptional circumstance is present.") (quoting *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978)). (ECF No. 4 at 2).  Because Burch has not established a colorable individual claim or any

21

actionable claim on behalf of the putative class, he has not demonstrated exceptional circumstances that would justify the appointment of counsel herein.

The defendants' reply asserts that, in arguing for the viability of his class action allegations, Burch has ignored the "insuperable deficiencies in his own Complaint" and now shies away from the "individualized determination" requirement that he so heavily relies on to support his own *ex post facto* claim.  (ECF No. 40 at 8-9).  The defendants' reply further states:

> Moreover, in shedding more light on his case theory, Plaintiff reveals the unworkable nature of a class action in this instance.  As discussed above, Plaintiff now balks at the Parole Board's individualized decision summary, or as he claims not "individualized" enough under *Carper*.  But this does not square with his purported request that this case proceed as a class action.  Among other things, his claim must be <u>typical</u> of those of the class.  Fed. R. Civ. P. 23(a).  The very nature of parole proceedings (as Plaintiff should know) prohibits this.  In addition to the proposed class members receiving varying degrees of setoff, some of which could be one year and thus have no *ex post facto* consequences, each class member must have that setoff determined on an individualized basis.  Plaintiff demands this under *Carper*, and *Garner* and *Morales* counsel the same; it just so happens to cut against his efforts to establish typicality here.

(*Id.* at 9).

The undersigned agrees that the individualized determinations required by *Morales, Garner*, *Carper,* and the applicable West Virginia regulations render this matter inappropriate for class action treatment.  Any potential claim of an *ex post facto* violation based upon the retroactive application of the 1997 amendment would be too individualized to the circumstances of a particular prisoner and, thus, is factually unique.  Accordingly, certification of a class as requested by Burch is not appropriate because he cannot meet the requirements of "commonality," "typicality," and "fair and adequate representation."  Consequently, the undersigned proposes that the presiding District

Judge **FIND** that Burch has not demonstrated that this matter is appropriate for class certification under Rule 23. Should the presiding District Judge determine that the Complaint herein should proceed on Burch's behalf, the undersigned nonetheless believes that the class action allegations should be stricken therefrom.

### **RECOMMENDATION**

As noted above, in *Twombly* and *Iqbal*, the Supreme Court held that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the Complaint as true and in the light most favorable to the plaintiff, the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that the Complaint herein does not contain allegations that could plausibly give rise to a present entitlement to relief by plaintiff Dennis Burch, on his own behalf, or on behalf of the proposed class. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the Complaint fails to state a claim upon which relief can be granted. Alternatively, if the presiding District Judge believes that Burch's individual Complaint should survive the pleading stage, the undersigned nonetheless proposes that the presiding District Judge strike the class action allegations contained therein.

Therefore, for the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Dismiss (ECF No. 24-1) and dismiss this civil action from the docket of the court. In the alternative, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion to Strike Class Action Allegations (ECF No. 24-2) and again refer this

matter to the undersigned for additional proceedings concerning only Burch's individual claim.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to plaintiff, and to transmit a copy to counsel of record.

February 25, 2019

Dwane L. Tinsley
United States Magistrate Judge

24